UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| AMANDA GUILLEN, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | §   CIVIL ACTION NO. V-11-48 |
| | § |
| CALHOUN COUNTY & | § |
| VERN LYSSY, | § |
| | § |
| Defendants. | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is Defendants Calhoun County and County Commissioner Vern Lyssy's ("Lyssy") (collectively "Defendants") Motion to Dismiss for Failure to State a Claim upon Which Relief Can Be Granted, and in the Alternative, for a More Definite Statement (Dkt. No. 6), to which Plaintiff Amanda Guillen ("Plaintiff") has responded (Dkt. No. 7). Having considered the motion, response, record, and applicable law, the Court is of the opinion that Defendants' motion should be **GRANTED.**

**I. Factual and Procedural Background**

According to the facts set forth in Plaintiff's Original Complaint, Plaintiff worked as the office manager for Calhoun County Precinct 2 for over five years, where she shared an office with Defendant Lyssy. (Compl., Dkt. No. 1 ¶ 4.1.) After being warned about a hidden camera by a fellow employee, Plaintiff found a camera hidden inside a speaker on Lyssy's desk that was pointed at Plaintiff's desk. (*Id.* ¶ 4.2.) Plaintiff felt violated by this discovery because, on occasion, she had to change clothes in the office because there was not a women's restroom for her to use. (*Id.*)

The following day, Plaintiff wrote a letter to Calhoun County Judge Mike Pfeifer and the Commissioners Court complaining about the hidden camera. (*Id.* ¶ 4.3.) Plaintiff stated in the letter that she felt violated, harassed, and as though she was being singled out. (*Id.*) Roughly one week later, Plaintiff was fired by Lyssy. (*Id.* ¶ 4.4.) No reason was given at the time other than "it wasn't working out." (*Id.*) Later on, "false reasons were made up" to justify the decision and to prevent Plaintiff from obtaining unemployment benefits. (*Id.*) Based on this timing, Plaintiff claims that it is obvious that she was fired for her harassment complaint in violation of both federal and state law. (*Id.*)

On September 9, 2011, Plaintiff filed the present lawsuit alleging causes of action against Calhoun County for retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Texas Commission on Human Rights Act (TCHRA), and against Lyssey for invasion of privacy under Texas common law. Defendants now move to dismiss both claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. In the alternative, Defendants move for a more definite statement under Federal Rule of Civil Procedure 12(e).

## II. Legal Standard

### A. Rule 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss an action for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion, a court must accept the plaintiff's allegations as true and draw all reasonable inferences in her favor. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *United States v. Gaubert*, 499 U.S. 315, 327 (1991). A court may not look beyond the face of the pleadings to determine whether

relief should be granted based on the alleged facts. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citing *St. Paul Ins. Co. of Bellaire, Texas v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991)).

Dismissal can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 737—38 (S.D. Tex. 1998). While a complaint need not contain detailed factual allegations to survive a 12(b)(6) motion, the Supreme Court has held that a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (abrogating the *Conley v. Gibson*, 355 U.S. 41 (1957) 'no set of facts' standard as "an incomplete, negative gloss on an accepted pleading standard") (citations omitted). Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Id.*; *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007).

### B. Rule 12(e) Motion for More Definite Statement

"If a complaint is ambiguous or does not contain sufficient information to allow a responsive pleading to be framed, the proper remedy is a motion for a more definite statement under Rule 12(e)." *Beanal v. Freeport—McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999).

## III. Analysis

### A. Retaliation

In order to state a *prima facie* claim for retaliation under Title VII or the TCHRA, a plaintiff must allege facts showing that: (1) she has engaged in a protected activity; (2) her employer took adverse employment action against her; and (3) a causal connection exists

between that protected activity and the adverse employment action. *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 878 (5th Cir. 1999) (Title VII); *Dias v. Goodman Mfg. Co., LP*, 214 S.W.3d 672, 676 (Tex. App.—Houston [14th Dist. 2007] pet. denied) (TCHRA). Not all activity is "protected." Instead, employees are protected from retaliation for opposing acts of discrimination based on race, color, religion, sex, disability, or national origin, or for charging, testifying, assisting, or participating in any manner in an investigation, proceeding, or litigation under Title VII or the TCHRA. 42 U.S.C. § 2000e–3; TEX. LAB. CODE § 21.055.

Plaintiff alleges she "made a discrimination and harassment complaint and opposed a discriminatory and harassing practice by Defendant [Calhoun County], suffered adverse employment actions as a result in that Defendant terminated Plaintiff's employment and otherwise discriminated against her, and there is a causal connection between the making of the discrimination and harassment complaint and opposition to the discriminatory and harassing practice and the adverse employment actions." (Compl. ¶ 5.2.)

Calhoun County moves to dismiss Plaintiff's retaliation claim on the grounds that she does not allege that she engaged in a protected activity. In response, Plaintiff states that she made a "harassment complaint based on a hidden camera that was pointed at her desk," and "'informal complaints to an employer or administrative agency can form the basis of a valid retaliation claim.'" (Dkt. No. 7 at 2 (quoting *Cusack v. Trans-Global Solutions, Inc.*, 222 F. Supp. 2d 834, 841–42 (S.D. Tex. 2002)).

In *Cusack*, this Court held that an employee who was discharged after he filed an informal complaint with the Federal Railroad Administration alleging non-compliance with safety regulations was entitled to protection under the Railway Labor Act, noting that "it is a well recognized principle in other areas of the law" that informal complaints can constitute

protected activity. *Cusack*, 222 F. Supp.2d at 841–42 (citing *Abramson v. William Paterson Coll.*, 260 F.3d 265, 289 (3rd Cir. 2001) (Title VII); *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701–02 (3rd Cir. 1995) (ADEA); *Truex v. Hearst Commc'ns, Inc.*, 96 F. Supp. 2d 652, 665–66 (S.D. Tex. 2000) (FLSA)). However, as the cases cited by this Court in *Cusack* demonstrate, a plaintiff's complaint—whether formal or informal—must still concern a *discriminatory practice* in order to form the basis of a retaliation claim under an *anti-discrimination* law. *Abramson*, 260 F.3d at 271 (professor's letter to employer's affirmative action officer specifically complaining about "religious discrimination" was protected activity under Title VII); *Barber*, 68 F.3d at 702 (plaintiff's letter to employer's human resources department did not constitute protected activity under the ADEA where it did "not explicitly or implicitly allege that age was the reason for the alleged unfairness").

Here, although Plaintiff alleges that she complained that "she felt violated by [the hidden camera], harassed, and that she felt like she was being singled out" (Compl. ¶ 4.3), Plaintiff does not allege that she complained that the alleged harassment was based on her race, color, religion, sex, disability, or national origin. A general complaint of "harassment" does not translate into a charge of illegal discrimination. As such, the Court finds that Plaintiff has failed to state a claim for retaliation under Title VII or the TCHRA.

### B. Invasion of Privacy

In order to state a claim for invasion of privacy under Texas common law, a plaintiff must allege facts showing: "(1) an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns, which (2) would be highly offensive to a reasonable person." *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993).

Here, Plaintiff alleges that "Defendant Vern Lyssy intentionally intruded on Plaintiff's solitude, seclusion, or private affairs. The intrusion would be highly offensive to a reasonable person and Plaintiff suffered injury as a result of Defendant's intrusion." (Compl. ¶ 5.3.) Specifically, Plaintiff claims that she "found a hidden camera on . . . Lyssy's desk in a speaker that was pointed at her desk" and "felt violated by this invasion of privacy" because, "[o]n occasion [she] had to change clothes in the office because there was not a women's restroom for her to use." (*Id.* ¶ 4.2.)

Lyssy moves to dismiss Plaintiff's invasion of privacy claim on the grounds that Plaintiff's allegations in Paragraph 5.3 of her complaint are merely legal conclusions and/or formulaic recitations of elements, and should thus be disregarded. Lyssey further argues that Plaintiff does not allege facts showing an actual, intentional intrusion on her solitude, seclusion, or private affairs. Specifically, Plaintiff does not allege that she was ever recorded changing clothes on the camera, nor does she claim that anyone, namely Lyssy, ever saw any recordings. Plaintiff also does not allege that Lyssy knew that she had changed clothes in their office on occasion, or that Lyssey installed the camera for the purposes of filming her changing clothes. As such, Lyssy argues, Plaintiff has failed to include factual allegations showing a right to relief that is more than mere speculation as to whether an actual invasion of her privacy occurred.

In response, Plaintiff argues that employees may have a reasonable expectation of privacy in their business offices, citing *Jones v. Houston Cmty. Coll. Sys.*, 816 F. Supp. 2d 418 (S.D. Tex. 2011). Plaintiff further argues that videotaping an individual without permission can constitute an actual intrusion under Texas law, citing *Clayton v. Richards*, 47 S.W.3d 149, 153 (Tex. App.—Texarkana 2001, pet. denied).

In *Clayton*, a husband whose wife hired a private investigator to install a hidden video camera in the couple's bedroom sued the investigator for invasion of privacy. *Clayton*, 47 S.W.3d at 152. In reversing the trial court's decision granting summary judgment in favor of the investigator, the court explained that "[a] video recording surreptitiously made in that place of privacy at a time when the individual believes that he or she is in a state of complete privacy could be highly offensive to the ordinary reasonable person." *Id.* at 155.

In *Jones*, two female college security officers complained about a hidden camera in a room that they and other employees used "in the normal course of business" to change into and out of their uniforms, which they were required to wear on duty. 816 F. Supp. 2d at 422. The plaintiffs in *Jones* did not know the number of people who monitored these hidden cameras, but they did allege that at least one person had reported seeing "the recordings of the covert cameras." *Id.* The plaintiffs also alleged that other employees made flirtatious comments to them—such as "Okay I'm watching you, I'm listening to you"—before they discovered the cameras, which suggested that other persons had accessed the video feed from the covert camera. *Id.* The court held that the plaintiffs had stated a claim for violation of their Fourth Amendment rights to be free from unreasonable searches, explaining that "it is objectively reasonable to expect privacy in an office when it is routinely used as a locker room." *Id.* at 434.

The court reached a different decision in *DeVittorio*, in which a group of police officers complained that the chief of police and a captain installed covert cameras in their locker room in order "to tape officers in various stages of undress," because no video recordings were ever made. *DeVittorio v. Hall*, 589 F. Supp. 2d 247, 250, 257 (S.D.N.Y. 2008). The *DeVittorio* court recognized that "[s]urely the installation of the camera created the potential for an invasion of privacy, but as the camera did not work and recorded no images, other than two still pictures of

the lockers, it conveyed no private information at all and, therefore, did not infringe on anyone's privacy interest." *Id.* at 257 (footnote omitted). In distinguishing *DeVittorio*, the *Jones* court stated that, "[b]y contrast, Jones and Mason alleged that their reasonable expectation of privacy was in fact infringed," by alleging that the covert cameras "recorded them while they changed clothes and that other individuals saw the video feed." *Jones*, 816 F. Supp. 2d at 436.

Here, unlike *Jones*, Plaintiff has not alleged that she routinely used the office she shared with Lyssy as a locker room. Even assuming that Plaintiff did have a reasonable expectation of privacy in the shared space, the Court finds that she has not alleged that an actual invasion into her private affairs occurred. Also unlike *Jones*, Plaintiff has not alleged that the hidden camera she found on Lyssy's desk was turned on, that any recordings were made, or that anyone ever saw such recordings, assuming they existed.

## IV. Conclusion

For the aforementioned reasons, Defendants' Motion to Dismiss for Failure to State a Claim upon Which Relief Can Be Granted (Dkt. No. 6) is **GRANTED**. However, because the Court is of the opinion that Plaintiff may be able to state a claim for relief against Defendants, Plaintiff is granted leave to amend her complaint no later than 30 days after entry of this Order, or this action will be dismissed.

It is so **ORDERED**.

**SIGNED** this 16th day of May, 2012.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE